**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| JULIE WOLFE, | ) | CASE NO. 4:15-CV-01819 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | VECCHIARELLI |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | | |

Plaintiff, Julie Wolfe ("Plaintiff"), challenges the final decision of Defendant,

Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying

her applications for a Period of Disability ("POD") and Disability Insurance Benefits

("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423 *et seq.* ("Act").

This case is before the undersigned United States Magistrate Judge pursuant to the

consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).  For the

reasons set forth below, the Commissioner's final decision is AFFIRMED.

## I.    PROCEDURAL HISTORY

On June 26, 2012, Plaintiff filed her applications for POD and DIB, alleging a

disability onset date of June 1, 2009.  (Transcript ("Tr.") 17.)  The claims were denied

initially and upon reconsideration, and Plaintiff requested a hearing before an

administrative law judge ("ALJ").  (*Id*.)  On March 6, 2014, an ALJ held Plaintiff's

hearing.  (*Id.*)  Plaintiff participated in the hearing, was represented by counsel, and

testified.  (*Id.*)  A vocational expert ("VE") also participated and testified.  (*Id.*)  On April

18, 2014, the ALJ found Plaintiff not disabled.  (Tr. 26.)  On July 14, 2015, the Appeals

Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision.  (Tr. 1.)

On September 6, 2015, Plaintiff filed her complaint to challenge the Commissioner's final decision.  (Doc. No. 1.)  The parties have completed briefing in this case.  (Doc. Nos. 14, 16.)

Plaintiff asserts the following assignments of error: (1) the ALJ failed to grant appropriate weight to the opinion of her treating physician and instead gave more weight to a non-treating source; and (2) the ALJ failed to perform a proper pain analysis.  (Doc. No. 14.)

## II.    EVIDENCE

### A.    Personal and Vocational Evidence

Plaintiff was born in November 1962 and was 46-years-old on the alleged disability onset date.  (Tr. 60.)  She has a high school education and completed vocational training for medical assisting, but did not obtain state certification.  (Tr. 37.)  She had past relevant work as a home health aide, small products assembler, general laborer, and explosive operator II.  (Tr. 25-26.)

### B.    Medical Evidence[1]

#### 1.    Treating Source Opinions

On May 8, 2013, a check-the-box Medical Source Statement concerning Plaintiff's mental capacity was completed by Samuel J. Daisley, D.O., and Mary T.

---

[1]    Plaintiff's two assignments of error revolve almost entirely around the weight given to the assessments of a treating source and an examining source.  Therefore, the Court foregoes a recitation of the evidence of record and instead focuses primarily on the relevant treating and examining source opinions.

2

James, CNP.  (Tr. 634-35.)   They opined that Plaintiff could rarely maintain attention

and concentration for extended periods of 2 hour segments, respond appropriately to

changes in routine settings, deal with work stress, or maintain regular attendance and

be punctual within customary tolerance.  (Tr. 634.)  They also stated that Plaintiff could

rarely complete a normal workday and workweek without interruption from

psychologically based symptoms and perform at a consistent pace without an

unreasonable number and length of rest periods.  (Tr. 634.)  However, with respect to

the latter, a notation was included that Plaintiff was "unable to focus because of pain."

(*Id*.)  Conversely, they found that Plaintiff had no limits in the areas of intellectual

functioning and making personal and social adjustment.  (Tr. 635.)  Plaintiff was also

unlimited in her ability to follow work rules, use judgment, deal with the public, relate to

co-workers, interact with supervisors, function independently without redirection, work in

proximity and in coordination with others without being distracted or without being

distracting.  (Tr. 634.)  When asked to identify the diagnosis and symptoms that

supported their assessment, Dr. Daisley and Ms. James indicated that Plaintiff is

intellectually intact, however, her concentration and focus is greatly diminished by her

severe pain that is constant.  (Tr. 635.)

On the same date, Dr. Daisley and Ms. James completed a Medical Source

Statement concerning Plaintiff's physical capacity.  (Tr. 636.)  They opined that Plaintiff,

in an eight-hour workday, could do the following: lift five pounds occasionally and zero

pounds frequently due to severe pain; could stand/walk one hour total and thirty

minutes without interruption; and, sit for one hour total and twenty minutes without

interruption.  (Tr. 636.)  Plaintiff could rarely climb, balance, stoop, crouch, kneel or

3

crawl.  (*Id*.)  She could rarely reach, push, or pull but could occasionally perform gross and fine manipulation.  (Tr. 637.)  While Plaintiff's range of motion was within normal limits, prolonged activity causes pain and numbness.  (*Id*.)  Dr. Daisley and Ms. James indicated that there are environmental restrictions that affect her impairments, including heights and moving machinery.  (*Id*.)  They noted she had been prescribed a cane, walker, brace, and TENS unit.  (*Id*.)  Plaintiff's pain was described as severe, causing interference with concentration, absenteeism, and takes her off task.  (*Id*.)  Plaintiff would need a sit/stand option, additional unscheduled rest periods, and the ability to elevate her legs at ninety degrees.  (*Id*.)

**2.    Agency Reports**

On February 7, 2013, Plaintiff was examined by State Agency physician Dr. Mary-Helene Massulo.  (Tr. 622-28.)  Her gait was described as waddling, slow, and cautious with slight limp to the right.  (Tr. 626.)  She did not believe Plaintiff was a fall risk and indicated she could stand/walk two to three hours in an eight-hour workday. (*Id*.)  There was no restriction of motion except for the dorsolumbar spine in flexion and extension.  (*Id*.)  Plaintiff could grasp and manipulate with each hand with normal pinch, and also could perform fine manipulation.  (*Id*.)  Her motor system had good tone, strength, and coordination; she had no difficulty rising from a seated position or performing toe and heel walking.  (Tr. 626-27.)  There was no apparent muscle hypertrophy, decreased muscle tone, or atrophy.  (Tr. 627.)  Deep tendon reflexes were 2+ bilatrerally.  (*Id*.)  Impression included history of a motor vehicle accident with multiple trauma; chronic back pain per patient with history of fracture of L3, L4, L5 with

4

surgical intervention two years following injury with poor results and radiculopathy into bilateral lower extremities; slow, consistently cautious, waddling type gait with slight limp favoring the right lower extremities; diminished flexion and extension of the dorsolumbar spine; chronic arthralgia bilateral knees per patient; chronic arthralgia bilateral feet per patient; gastroesophageal under treatment; history of tobacco abuse; poor dental repair; hypertension per medical history; arthritis per medical history; hypothyroid per medical history and medication; history of bilateral carpal tunnel release; history of ablation and multiple epidural blocks; and history of benign lump removed from right breast per medical history.   (Tr. 627.)  With regard to functional limitations, Dr. Massullo opined as follows:

> The patient appears to be able to do work related activities such as hearing, speaking, sitting, walking, standing, lifting and traveling.... [S]he has a consistent slow, waddling type gait with slight limp favoring the [right lower extremity] ... any prolonged walking, standing, traveling using [both lower extremities], bending or lifting using [both lower extremities] or back would be compromised accordingly.  A seated position, hearing and speaking and use of [both upper extremities] but not chronic ... would be possible.

(Tr. 628.)

On February 9, 2013, State Agency physician William Bolz, M.D., found that Plaintiff, in an 8-hour workday, could lift/carry 20 pounds occasionally and 10 pounds frequently, stand/walk 6 hours, and sit for 6 hours.[2]  (Tr. 78.)  He opined Plaintiff could balance and climb ramps and stairs frequently, could occasionally stoop, kneel, crouch, and crawl, and could never climb ladders, ropes or scaffolds.  (Tr. 79.)  Plaintiff had no

---

[2]  Dr. Bolz had access to Dr. Massullo's consultative examination report rendered a few days earlier.  (Tr. 78.)

5

manipulative, environmental, communicative, or visual limitations.  (*Id*.)  Dr. Bolz

indicated that Dr. Massullo's consultative examination was more restrictive than his

findings, and opined that it was an overestimate of the severity of Plaintiff's

restrictions/limitations which was based only on a snapshot of the individual's

functioning.  (Tr. 80.)

**C.**     **Hearing Testimony**

      **1.**     **Plaintiff's Hearing Testimony**

At the March 6, 2014 hearing, Plaintiff testified as follows:

- She previously worked as a home health aide and also worked in factories, last working in 2009.  (Tr. 38.)

- It is difficult for her to reach or stand for longer than 30 to 60 minutes.  (Tr. 38-39.)  She experiences back spasms and nerve pain in her legs and feet.  (Tr. 39.)  When that happens, she lays down and rests with a heating pad or TENS unit.  She also takes medication for her pain, including Oxycodone.  (Tr, 39, 43.)  These treatments merely ease her pain.  (Tr. 39-40.)

- She has difficulty climbing stairs.  (Tr. 40.)

- She can drive a car, but does not travel very far as sitting for more than 15 minutes causes pain.  (Tr. 41.)

- She only cooks once or twice a week, but used to cook daily.  (Tr. 41.)

- She does not attend any social functions.  (Tr. 42.)

- She shops for groceries, but her husband helps with lifting.  (Tr. 42.)

- To pass the time, she watches television and reads.  (Tr. 42.)

- She described her pain as sharp, stabbing, throbbing, and constant.  (Tr. 43.)  She rated her daily pain between 8 and 9 on a scale of 10 even when taking her pain medication.  (Tr. 44.)  It affects her ability to sleep and concentrate.  (Tr. 45-46.)

6

- She underwent a laminectomy in 2011, which made her pain worse.  (Tr. 43.)

- She has attempted physical therapy, received injections, and has undergone frequency ablation.  (Tr. 44-45.)

- She stopped using a cane when instructed to do so.  (Tr. 47.)

- She has no mental health symptoms.  (Tr. 47.)

- She has fibromyalgia.  (Tr. 48.)

### 2.    Vocational Expert's Hearing Testimony

At the hearing, the VE classified Plaintiff's past relevant work as follows: home health aide, Dictionary of Occupational Titles ("DOT") 354.377-014, semi-skilled, medium; small products assembler, DOT 706.684-022, unskilled, light; general laborer, DOT 559.667-014, medium.  (Tr. 52.)  The ALJ posed the following hypothetical to the VE:

> [I]f you would consider a person of the claimant's age, education, and past relevant work experience with the capacity for light work.  However, climbing ramps and stairs is limited to frequently.  Climbing ladders, ropes, and scaffolds, never.  Balancing frequently.  Stooping, kneeling, crouching, crawling, occasionally.  Would that person be able to perform the work the claimant performed in the past?

(Tr. 52-53.)

The VE responded: "Yes, as she performed it in the case of the home health aide and the assembly position, the general laborer position at Andover, but done [sic] the combined technical system, assembly position both as performed and per the DOT."  (Tr. 53.)

In response to questions from plaintiff's counsel, the VE testified that Plaintiff had not acquired any skills from her past work that were transferable to the sedentary

7

category.  (Tr. 53.)  The VE also clarified that the hypothetical person could perform the home health aide position as Plaintiff performed it but not as it is described in the DOT. (Tr. 53.)  The VE stated that a person with claimant's age, education, and work history could not work if she was limited to lifting a maximum of 5 pounds, standing/walking one hour in an 8-hour work day.  (Tr. 54.)  The VE further testified that an individual capable of light, unskilled work but who would be off task 15 percent of the time or more was also unemployable.  (*Id*.)  The VE stated that being off task 10 percent or more consistently would be a work preclusive limitation.  (*Id*.)  Finally, the VE opined that a person who would miss two or more days per month in an unskilled position would be unemployable.  (Tr. 54-55.)

### III.    STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524 (6th Cir. 1981)*.  A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990)*.  First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks

8

disability benefits.  20 C.F.R. §§ 404.1520(b) *and* 416.920(b).  Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c) *and* 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience.  20 C.F.R. §§ 404.1520(d) *and* 416.920(d).  Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f).  For the fifth and final step, even if the claimant's impairment does prevent him from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

### IV.  SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.    The claimant last met the insured status requirements of the Social Security Act on December 31, 2013.

2.    The claimant did not engage in substantial gainful activity during the period from her alleged onset date of June 1, 2009 through her date last insured of December 31, 2013.  (20 CFR 404.1571 *et seq*.).

3.    Through the date last insured, the claimant had the following severe impairments: degenerative disc disease, with history of laminectomy. (20 CFR 404.1520(c)).

4.    Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.    After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except for the following limitations. The claimant can frequently climb ramps and stairs, but never ladders, ropes, or scaffolds. The claimant can frequently balance. The claimant can occasionally stoop, kneel, crouch, and crawl.

6.    Through the date last insured, the claimant was capable of performing past relevant work as an explosive operator II and a home health aide. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.    The claimant was not under a disability, as defined in the Social Security Act, at any time from June 1, 2009, the alleged onset date, through December 31, 2013, the date last insured (20 CFR 404.1520(f)).

(Tr. 19-26.)

## V.    LAW & ANALYSIS

### A.    Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court

does not review the evidence *de novo*, make credibility determinations, or weigh the evidence.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record.  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Brainard*, 889 F.2d at 681.  A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion.  *Ealy*, 594 F.3d at 512.

### B.    Plaintiff's Assignments of Error

#### 1.  Treating Physician and Examining Physician

In her first assignment of error, Plaintiff asserts that the ALJ erred by ascribing little weight to the opinion of her treating physician, Dr. Daisely.  (Doc. No. 14 at pp. 9-14.)  She also takes issue with the ALJ giving minimal weight to the opinion of State Agency examining physician, Dr. Massullo.  (*Id*.)

"An ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.' "  *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)) (internal quotes omitted).  If an ALJ decides to give a treating

source's opinion less than controlling weight, he must give "good reasons" for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight.  *See Wilson*, 378 F.3d at 544 (quoting S.S.R. 96-2p, 1996 WL 374188, at *5 (S.S.A.)).  This "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is to "let claimants understand the disposition of their cases" and to allow for "meaningful review" of the ALJ's decision, *Wilson*, 378 F.3d at 544 (internal quotation marks omitted).  Where an ALJ fails to explain his reasons for assigning a treating physician's opinion less than controlling weight, the error is not harmless and the appropriate remedy is remand. *Id.*

"The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002), citing *Harris v. Heckler,* 756 F.2d 431, 435 (6th Cir. 1985).  Furthermore, it is well-established that administrative law judges may not make medical judgments.  *See Meece v. Barnhart,* 192 Fed. App'x 456, 465 (6th Cir. 2006) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.") (quoting *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)).  Although an ALJ may not substitute his or her opinions for that of a physician, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009); see also

12

*Winning v. Comm'r of Soc. Sec.*, 661 F. Supp.2d 807, 823-24 (N.D. Ohio 2009)

("Although the ALJ is charged with making credibility determinations, an ALJ 'does not have the expertise to make medical judgments.'") (O'Malley, J.)

With respect to Dr. Daisley, the ALJ acknowledged that he was Plaintiff's primary care physician and that he completed two checklist forms regarding Plaintiff's work-related limitations – one mental and one physical.  (Tr. 23.)  After recounting the content of the two checklist questionnaires, the ALJ addressed those opinions as follows:

> The undersigned can afford little weight to this treating source opinion, for several reasons.  First, Dr. Daisley has not treated the claimant for mental health concerns or concentration problems, and while his statement suggests that these limitations are due to distraction from pain, the claimant has denied any mental health symptoms.  This suggests that the physician's opinion may not be fully reliable, and contains a sympathetic bias in overstating the extent of her limitations.
>
> The physical limitations stated by Dr. Daisley are not supported by the weight of the objective evidence.  As noted above, the claimant's lumbar fractures failed conservative treatment and required surgery in May 2011, but subsequent physical examinations have shown good strength, sensation, and ambulation.  In addition, post-surgical x-rays have shown stable post-surgical appearance of the spine, with disc spaces well-maintained. These unremarkable findings suggest that the surgical intervention was successful at correcting the degenerative changes in the spine, and are inconsistent with the current level of pain and disability that the claimant has alleged.  In addition, the assertion that the claimant could only sit, stand, and walk for a total of two hours out of an eight-hour workday does not even correspond with the claimant's allegations, as she did not indicate that she spent most of her day reclining or laying down.  There is also no evidence of loss of sensation or pain in the upper extremities that would cause any limitation in her ability to perform manipulations, let alone reduce her capacity to occasional for those activities.  Further, while the record indicates that the claimant briefly used a wheeled walker and a cane during her recovery from surgery, Dr. Daisley failed to specify that the claimant does not currently use an assistive device, which raises a question regarding the reliability of the reported limitations.  The most recent treatment records from Dr. Daisley

13

in 2013 reflect several unrelated acute complaints and routine health maintenance visits, but generally these did not suggest that the claimant continued to complain of disabling symptoms to this treating source. (5/3/2013 - 12/23/2013, Exhibit 22F).  Overall, Dr. Daisley's opinion appears to be an overstatement of the claimant's limitations that is inconsistent with the weight of the evidence.

(Tr. 24.)

Plaintiff's contends that Dr. Daisley's opinion should have been credited given her longitudinal relationship with Plaintiff.  (Doc. No. 14 at p. 14.)  She asserts that the ALJ's statement that Dr. Daisley exhibited a sympathetic bias has no basis.  (*Id*.)  There is nothing unreasonable about the ALJ's conclusion that Dr. Daisley's opinion may have been influenced by sympathy for his patient where he found mental limitations despite a lack of treatment for mental health or concentration issues.[3]  Further the ALJ's above quoted opinion offers no less than five reasons for rejecting Dr. Daisley's opinion concerning Plaintiff's physical impairments including good strength and ambulation post-surgery as well as post-surgical x-rays showing stable appearance of the spine;

---

[3]  Plaintiff emphasizes that her concentration and attention issues stemmed from her pain.  (Doc. No. 14 at p. 14.)  The ALJ acknowledged in her opinion that the Dr. Daisley observed Plaintiff's concentration problems stemmed from her pain symptoms.  However, as discussed in the ensuing section, the ALJ found the extent of Plaintiff's complaints of pain were not credible, and credibility determinations are reserved for the ALJ and not to medical providers.  Many courts have held that "[w]hen a treating physician's opinion is based on a claimant's self reports which are themselves not credible, it is not error to assign little weight to the opinion." *Webb v. Comm'r of Soc. Sec.*, 2013 U.S. Dist. LEXIS 183418 at *18, 2014 WL 129237 at * 6 (E.D. Tenn. Jan. 14, 2014) (citing *Vorholt v. Comm'r of Soc. Sec.*, 409 Fed App'x 883, 889 (6th Cir. 2011)); *see also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (affirming ALJ's rejection of treating physician opinions where "[t]hese doctors formed their opinions solely from Smith's reporting of her symptoms and her conditions and the ALJ found that Smith was not credible"); *Stevenson v. Astrue*, 2010 U.S. Dist. LEXIS 78475, 2010 WL 3034018 at * 8 (M.D. Tenn. Aug. 3, 2010) (finding that a medical opinion "based on [an] incredible self-report could reasonably be given insignificant weight by an ALJ when the credibility determination is based on substantial evidence")

Plaintiff's testimony did not suggest that she needed to lie down most of the day as suggested by Dr. Daisley's extreme standing/walking and sitting limitations; lack of any evidence supporting manipulative restrictions; inconsistency between Dr. Daisley's statement that ambulatory aids had been prescribed and Plaintiff's denial that she used an assistive device; and, a lack of complaints concerning disabling levels of symptoms in the most recent treatment notes.  (Tr. 24.)

Plaintiff's brief does not explain how these reasons fail to constitute "good reasons" under the treating physician rule.  (Doc. No. 14 at pp. 11-14.)  Instead, Plaintiff merely recounts the objective testing that lead up to Plaintiff's surgery and cites portions of the record where she continued to complain of pain post-operatively.  (*Id*.)  Plaintiff's argument is essentially an invitation for this Court to conduct an improper *de novo* review of the evidence, to re-weigh the various medical records, and to makes its own determination that Dr. Daisley's opinion should have been accorded great weight. However, in this context, the Court's review is limited to whether "good reasons" were given for according less weight to the treating source's opinion and that those reasons were sufficiently specific.  In a social security disability appeal, a reviewing court does not conduct a *de novo* review, resolve conflicts in the evidence, or decide questions of credibility.  *See, e..g, Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 468 (6th Cir. 2006); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Rogers v. Astrue*, 2012 U.S. Dist. LEXIS 24712, 2012 WL 639473 (E.D. Ky. Feb. 27, 2012).

Accordingly, the ALJ set forth sufficient reasons for discounting the opinion of Dr. Daisley.

Next, Plaintiff argues that the ALJ should have granted greater weight to the

15

opinion of examining but non-treating physician, Dr. Massullo, but fails to acknowledge that her opinion was not subject to the treating physician rule.  It is well established that an ALJ is not required to discuss each and every piece of evidence in the record for his decision to stand.  *See, e.g., Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004).  However, where the opinion of a medical source contradicts his RFC finding, an ALJ must explain why he did not include its limitations in his determination of a claimant's RFC.  *See, e.g., Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011) (Lioi, J.) ("In rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis.").  Social Security Ruling 96-8p provides, "[t]he RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  SSR 96-8p, 1996 WL 374184, *7 (July 2, 1996).

> The ALJ addressed Dr. Massullo's opinion as follows:
>
> The undersigned has also considered the opinion of the consultative examining physician, who opined vaguely that due to her history of degenerative disc disease and laminectomy "any prolonged walking, standing, traveling using the bilateral lower extremities, bending or lifting using the bilateral lower extremities or back would be compromised accordingly," (Exhibit 12F, p. 8) seemingly suggesting that she would be unable to stand or walk for prolonged periods.  The undersigned can give minimal weight to this opinion, as it fails to provide specific work-related limitations.  If the physician intended for this to mean the claimant was limited to sedentary work, that opinion would be inconsistent with the relatively unremarkable findings on examination, as discussed above.

(Tr. 24-25.)

First, it is unclear whether any of Dr. Massullo's opinions are actually inconsistent

16

with the RFC. Assuming *arguendo* that they are, the ALJ adequately explained the reasons for ascribing her opinion minimal weight. The regulations state that "[g]enerally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. § 404.1527(c)(2). Here, the AJ ascribed more weight to the opinion of non-examining State Agency physician Dr. Bolz. (Tr. 25.) However, the mere fact that the ALJ gave more weight to a non-treating non-examining physician than to a non-treating but examining physician is not grounds for remand. Aside from finding Dr. Massullo's opinion vague for failing to provide specific work-related limitations, the ALJ plainly *explained* why she was not ascribing any weight to Dr. Massullo's opinion – it was not consistent with the unremarkable findings on examination. The explanation requirement with respect to non-treating medical sources "should not be confused with the standard required for the weight ascribed to treating sources [as] [t]he Sixth Circuit has held that the regulation requiring an ALJ to provide 'good reasons' for the weight given a treating physician's opinion does not apply to an ALJ's failure to explain his favoring of one non-treating source's opinion over another." *See Alvarado v. Colvin*, 2016 U.S. Dist. LEXIS 27117 at **10-11 (N.D. Ohio, Jan. 5, 2016) (White, M.J.) (*citing Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496 (6th Cir. 2006), *adopted by* 2016 U.S. Dist. LEXIS 27111 (N.D. Ohio Mar. 3, 2016); *see also Allums v. Colvin*, 2015 U.S. Dist. LEXIS 169408 at **64-65 (N.D. Ohio Nov. 25, 2015) (Limbert, M.J.) (also citing *Kornecky* for the same proposition); *Pierce v. Comm'r of Soc. Sec.*, 2015 U.S. Dist. LEXIS 147531 at *14 (S.D. Ohio Oct. 30, 2015) ("courts have held that the failure to provide an explicit rationale for

17

choosing between the competing opinions of non-treating sources is not necessarily a fatal error.")

As such, Plaintiff's assignment of error is without merit.

### 2. Credibility

In her second assignment of error, Plaintiff contends that the ALJ failed to perform a proper credibility analysis concerning her pain complaints.  (Doc. No. 14 at pp. 15-17.)  Plaintiff cites the requirements of Social Security Ruling (SSR) 96-7p, 1996 SSR LEXIS 4 and contends the ALJ "did not address all the pain factors."  (*Id*. at pp. 15-16.)

Credibility determinations regarding a claimant's subjective complaints rest with the ALJ, are entitled to considerable deference, and should not be discarded lightly. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). However, the ALJ's credibility determinations must be reasonable and based on evidence from the record.  *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007); *Weaver v. Sec'y of Health & Human Servs.*, 722 F.2d 313, 312 (6th Cir. 1983).  The ALJ also must provide an adequate explanation for his credibility determination.  "It is not sufficient to make a conclusory statement 'that an individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" S.S.R. 96-7p, 1996 WL 374186 at *4 (S.S.A.).  Rather, the determination "must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent

18

reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight." *Id.*  "While in theory [a court] will not 'disturb' an ALJ's credibility determination without a 'compelling reason," *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001), in practice ALJ credibility findings have become essentially 'unchallengeable.'" *Hernandez v. Comm'r of Soc. Sec.*, 2016 U.S. App. LEXIS 5040 (6th Cir. 2016) (*citing Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 113 (6th Cir. 2010)).

When determining a claimant's credibility, the ALJ should look to medical evidence, statements by the claimant, other information provided by medical sources, as well as any other relevant evidence in the record.  *See* SSR 96-7p, 1996 SSR LEXIS 4.  Beyond medical evidence, an ALJ should consider seven factors: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  SSR 96-7p, 1996 SSR LEXIS 4, Introduction.

Here, the ALJ acknowledged she must follow a two-step process to determine whether Plaintiff's pain was credible.  (Tr. 20.)  The ALJ conducted a lengthy discussion of Plaintiff's medical treatment since her 2009 motor vehicle accident.  (Tr. 21-23.)  She concluded that "[w]hile the objective findings and treatment history are consistent with a

back impairment that would be likely to cause some pain and discomfort, and preclude

heavy lifting or strenuous activities, it is inconsistent with the level of limitations the

claimant has alleged."  (Tr. 22.)  The ALJ noted that: Plaintiff underwent surgery in May

2011, and required physical therapy for only one month afterwards; post-operatively

Plaintiff was described as neurologically stable with normal strength and sensation in

the extremities; Plaintiff admitted to walking a lot with her husband in August 2011;

Plaintiff reported physical therapy was helping and that Percocet was prescribed for

breakthrough pain; Plaintiff was advised to "resume all activities as tolerated before

surgery;" and no additional surgery was recommended in May of 2012 while x-rays from

the same month revealed no acute abnormality of the lumbar spine.  (Tr. 22-23.)  The

ALJ concluded as follows:

> The evidence demonstrates other inconsistencies that suggest the
> claimant's current allegations of disabling pain are not fully reliable.
> Although she has reported pain severity as high as 10 of 10, there is no
> evidence that she has sought emergency department treatment or
> required hospitalization for pain control.  In fact, her treatment since her
> surgery has been relatively routine and she currently only treats with her
> primary care physician, who prescribes muscle relaxants and tramadol.
> The claimant was on Percocet briefly following her surgery, but the
> evidence indicates that her treating sources felt her pain could be
> controlled with less aggressive pain medications, so she has not had
> long-term use of powerful narcotics.
>
> In addition, although she reports pain even while sitting, physical
> examinations routinely noted that she was in no apparent distress and
> could sit comfortably in her chair.  Although she testified that she has
> fallen several times recently, she did not allege difficulty maintaining
> balance at the consultative physical examination (Exhibit 12F, p. 5),
> suggesting exaggeration regarding her limitations.
>
> Further, the claimant's primary care physician routinely counseled the
> claimant on increasing physical activity and exercise to help control her
> hypercholesterolemia (Exhibit 8F, p. 50), which would not be an expected
> recommendation in the case of an individual with the mobility limitations

she has described.

* * *

Therefore, considering the medical evidence and medical opinions discussed above, the undersigned finds that the claimant's subjective complaints and alleged limitations are not fully persuasive and that she retains the capacity to perform work activities with the limitations set forth above.  While she may have some discomfort, the evidence of normal strength, sensation, and ability to ambulate without an assistive device suggests that the claimant would be able to perform the range of light work activity set forth above.

(Tr. 23, 25.)

Plaintiff essentially concedes that the ALJ offered numerous reasons for finding her less than fully credible.  (Doc. No. 14 at pp. 16-17.)  These reasons included Plaintiff alleging 10/10 pain but never seeking emergency or hospital care, routine treatment that consisted primarily of muscle relaxants and Tramadol rather than more powerful pain medications, and recommendations from Plaintiff's treating physician that she should increase her physical activity.  (*Id*.)  The reasons given by the ALJ for finding Plaintiff less than fully credible incorporate several of the seven factors, as they discuss medication – including the types taken, treatment other than medication, and Plaintiff's inconsistent statements.  Plaintiff contends the ALJ "did not address all the pain factors."  (Doc. No. 14 at p. 16.)  An ALJ need not analyze all seven factors, but should show that she considered the relevant evidence.  *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005); *Masch v. Barnhart*, 406 F. Supp.2d 1038, 1046 (E.D. Wis. 2005); *Allen v. Astrue*, 2012 U.S. Dist. LEXIS 47590 (N.D. Ohio Apr. 4, 2012).  Plaintiff complains the ALJ did not address all the methods of treatment she sought, nor did she consider that Plaintiff tried several kinds of medication.  (Doc.

21

No. 14 at p. 16.)  She also disputes the ALJ's characterization of her pain as routine, pointing out that she was in a pain management program for over a year.  (*Id*. at p. 17.) While Plaintiff clearly disagrees with the inferences the ALJ drew from the evidence of record and essentially invites the Court to construe the evidence in a different light more favorable to her, such an argument does not provide a basis for remand given the considerable deference accorded credibility determinations.

Plaintiff's second assignment of error is, therefore, without merit.

## VI.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED**.

s/ *Nancy A. Vecchiarelli*          
U.S. Magistrate Judge

Date: May 11, 2016

22